IN THE UNITED STATED DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


ROBERT DAVIES,                    )
       Petitioner,              )
                                  )
    v.                          )          Criminal Action No. 07-436
                                  )
UNITED STATES OF AMERICA,         )
       Respondent.              )

## MEMORANDUM OPINION

CONTI, District Judge.

Pending before the court is a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (the "§ 2255 Motion") (Docket No. 85) filed by petitioner,[1] Robert Davies ("petitioner" or "Davies"), a motion for appointment of counsel for any § 2255 Motion proceedings (Docket No. 99), and a motion for release from sentence and stay of supervised release pending the § 2255 Motion decision (Docket No. 101). After reviewing the Motion, petitioner's plea agreement (the "Plea Agreement") (sealed at Docket No. 62), the transcript of the hearing on petitioner's change of plea (Docket No. 98), the transcript of the hearing on petitioner's sentencing (Docket No. 84), and the submissions of the government (Docket No. 96) and petitioner (Docket Nos. 86 and 100), the court will deny petitioner's motion because the record shows clearly that petitioner voluntarily waived his right to attack collaterally his sentence. As a result, petitioner's motions to appoint counsel and for release from sentence and stay of supervised release pending the § 2255 Motion decision will be denied as moot.

---

[1] Petitioner is identified as the defendant in the relevant case hearing transcripts.

I.    **Procedural Background**

On November 28, 2007, the government filed a criminal complaint (the "Complaint')

(Docket No. 1) in the United States District Court for the Western District of Pennsylvania,

charging Davies with  knowingly traveling in interstate commerce for the purpose of engaging in

illicit sexual conduct with another person, in violation of 18 U.S.C. §§ 2423(b) and (e), on or

about November 4, 2007.  An affidavit of a Federal Bureau of Investigation (the "FBI") special

agent, Gregory J. Craig ("Agent Craig"), which was attached as an exhibit to the Complaint,

stated, in part:

> 3.    On or about November 5, 2007, Special Agent Gregory J.
> Craig was contacted by the City of Washington Police Department
> in Pennsylvania.  Lt. Dan Stanek of Washington Police Department
> relayed that an individual named  Robert Richard Davies, age 32,
> was arrested in Pennsylvania in connection with an interstate,
> "traveler" child exploitation investigation.
>
> 4.    The investigation began on November 4, 2007, when Cecil
> Township Police Officer Richard Egizio was on patrol at
> approximately 12:45 AM.  In the course of responding to another
> call, Officer Egizio noticed a vehicle pulled off on the side of
> Klinger Road,  with three individuals standing outside.  After
> responding to the other call, Officer Egizio returned to Klinger
> Road and checked on the vehicle, which he had deemed suspicious.
> The driver of the car was identified as Robert Davies of Conneaut,
> Ohio, and the two passengers were minor female children, aged 14
> and 15 years old, who reside in the City of Washington,
> Pennsylvania.  The minor children claimed to have met Davies that
> very evening and further explained that Davies had told them he
> was 19 years old, despite his actual age of 32 years.

(Craig Aff. 2, Nov. 28, 2007) (Docket 1-1.)

On December 14, 2007, petitioner made an appearance before a  magistrate judge, who

noted that petitioner was detained by a district judge in the Northern District of Ohio.  (Docket

No. 7).  A federal public defender was appointed to represent petitioner.  (Docket No. 9.)

Following a preliminary examination on December 17, 2007, a magistrate judge found probable cause existed to support a finding that petitioner committed the offense. (Docket No. 12.) The next day, a federal grand jury returned a one-count indictment charging petitioner with knowingly traveling in interstate commerce for the purpose of engaging in illicit sexual conduct with another person, as defined in 18 U.S.C. § 2423(f)(1), in violation of 18 U.S.C. §§ 2423 (b) and (e). (Docket No. 14.) On December 27, 2007, petitioner was arraigned before a magistrate judge and entered a plea of not guilty. (Docket No. 20.)

In October 2008, Attorney Komron J. Maknoon ("Maknoon") entered a notice of attorney appearance for petitioner in this case. (Docket No. 35.) At petitioner's change of plea hearing held on May 27,[2] 2009, the Plea Agreement, which was signed by Davies and Maknoon (Docket No. 62), was entered as an exhibit to be maintained under seal[3] by the court. At that hearing, petitioner entered a plea of guilty to count one of the indictment at criminal number 07-436.

On June 3, 2010, petitioner filed a motion for release and stay of supervised release pending resolution of his 28 U.S.C. § 2255 Motion.

## II.     Factual Background

During Davies' change of plea hearing, he testified under oath that the prosecutor accurately portrayed the underlying factual background when asked by the court to review the government's evidence with respect to count 1. (Change of Plea Hr'g Tr. 32, May 27, 2009.) The prosecutor stated:

---

[2] The transcript of the hearing of petitioner's change of plea inaccurately notes that the date of the hearing was on July 27, 2009.

[3] Although entered under seal, the terms of petitioner's Plea Agreement were disclosed in open court by the government and petitioner's counsel at petitioner's sentencing hearing held on October 9, 2009.

If we had a trial we would show that the investigation began on November 4th of 2007. Cecil Township Police Richard Egizio was on patrol. It was approximately 12:45 a.m. He was responding to another call, and he noticed at that time a vehicle pulled off the side of Klinger Road with three individuals standing outside that car. He went on and responded to that call, but took note of that car, and on return, he went to the Klinger Road location and checked on that car, because he had deemed it suspicious.

The driver of the car was identified as Robert Davies of Conneaut, Ohio. The two passengers were minor female children, age 14 and 15, who reside in the city of Washington, Pennsylvania. The minor children claimed to have met Mr. Davies that very evening, and they further explained that he had told them that he was 19 years old, despite his actual age of 32 years.

After being transported to the Cecil Township Police station, the minors' parents were contacted, and the minors were interviewed in greater detail. The minors reported that while they were both at the home of the 14-year-old, they had been using the computer to talk to, to guys, and that's in quotes, on a pre-teen chat site. The 14-year-old primarily engaged in chatting, although the 15-year-old was also present. The. [sic]

[In] [t]he course of the chatting, they encountered an individual who identified himself on screen as, true 2 - - that's the number two - - self, and nasty man for sluts, who was later determined to be Davies. They furthered this discussion on Yahoo chat.

The minors claim to have provided their correct ages, and the individual that they chatted with said he was a 19-year-old male from Pittsburgh. The discussion became sexual. Mr. Davies asked questions about the sexual experience of the 14-year-old girl. According to the minors, Mr. Davies asked if he could see what they looked like, and in response, the 14-year-old sent three photos of herself that were clothed, and directed him to her MySpace site so he could see the photograph of the 15-year-old.

According to the minors, Davies sent three photographs of himself via the computer, none sexually explicit.

In the course of instant messaging, Mr. Davies obtained the home telephone number of the 14-year-old. According to the minors, Mr. Davies called her home telephone, and they talked for approximately ten minutes. This has been corroborated with phone records. The 14-year-old estimated that the phone call took place at approximately 7:30 to 8:00 p.m. on November 3rd.

Mr. Davies asked further sexual questions, including whether the two minors would engage in a threesome, and he asked whether he could pick them up. Via the Internet, he asked whether the 14-

year-old would, quote, wear something sexy, end quote, when he picked them up, and what color, quote, thong and bra you got on, and, maybe you will let me see it, end quote.

According to the 14-year-old, it was approximately 11:30 p.m. when she received a call from Davies, who said he was in Washington, PA near a Wendy's restaurant. The minor gave him directions to her house, and she had previously provided her address during the computer chat.

Shortly thereafter, Mr. Davies arrived at her home, where she resides with her grandmother. The minor snuck out of the house, and they got into Mr. Davies' car.

The driving time from Conneaut, Ohio to Washington, Pennsylvania is approximately three hours. The 14-year-old suggested, consistent with previous sexually explicit chats, that they travel to a horse farm in Cecil Township, Pennsylvania. While they were looking at horses, Officer Egizio drove by, and that's what prompted the detention and arrest of Mr. Davies.

After interviewing those minors, Washington police officer John Yankosec traveled to the home of the 14-year-old in order to obtain her computer, by consent from her guardian, her grandmother. When the officers prepared to seize the computer, the contents of the computer screen displayed the sexually explicit chat that had gone on between Davies and the 14-year-old, including their sexually graphic discussion about horses and other animals.

In the chat, for example, Mr. Davies inquires of the minor whether she ever made a horse ejaculate, and other animal-focused sexual talk.

On November 4th, 2007, after midnight sometime, Mr. Davies made a statement to Officer John Yankosec at the Washington Police Department. He admitted to conversing with the minors on a computer on pre-teen sites, and eventually to Yahoo instant messaging. He did not deny that the content of the chats was sexual, explaining it was just a way to know somebody. He admitted to traveling from his home in Ohio, and he also admitted to talking to the minors on the telephone.

According to the minors, as corroborated by Mr. Davies, no sexual conduct had actually taken place here in Pennsylvania as of the time of his arrest.

That, in summary, your Honor, along with some other forensic and documentary evidence, would be what we'd present at trial.

(Id. at 28-32.)

## A.    The Plea Agreement

Pursuant to the Plea Agreement petitioner agreed, among other things, that he would: 1) plead guilty to count of the indictment charging him with knowingly traveling in interstate commerce for the purpose of engaging in illicit sexual conduct with another person, as defined in 18 U.S.C. § 2423(f)(1), in violation of 1Title 8 U.S.C. §§ 2423 (b) and (e); 2) assist law enforcement in investigating violations of state and federal laws from 2005 until the present and provide evidence concerning crimes of violence, including child sexual assault; 3) provide all documents and physical evidence within his possession concerning the investigation; 4) submit to a polygraph examination if asked to so do; 5) testify, if requested; 6) forfeit to the United States all property subject to forfeiture under 18 U.S.C. § 2253(a)(3), including a Dell XPS 400 desktop computer, a Dell Dimension desktop computer, a Seagate external hard drive, and related storage media; 7) register as a convicted sex offender under the law of any state where he resides, is employed, carries on a vocation, or is a student; 8) waive the right to take a direct appeal from his conviction or sentence under 28 U.S.C. § 1291 or 18 U.S.C. § 3741, subject to three exceptions[4] (Plea Agm't  ¶¶ A.1, 2, 5-8, 11); and  9) waive "the right to file a motion to

_____

[4]        Robert Davies waives the right to take a direct appeal from his conviction or sentence under 28 U.S.C. § 1291 or 18 U.S.C. § 3742, subject to the following exceptions:

> (a)        If the United States appeals from the sentence, Robert Davies may take a direct appeal from the sentence.

> (b)        If (1) the sentence exceeds the applicable statutory limits set forth in the United States Code, or (2) the sentence unreasonably exceeds the guideline range determined by the Court under the Sentencing Guidelines, Robert Davies may take a direct appeal from the sentence.

vacate sentence, under 28 U.S.C. § 2255, attacking his conviction or sentence, and the right to file any other collateral proceeding attacking his conviction or sentence." (Id. ¶ A.12.)

The United States Attorney agreed, among other things: 1) not use against Davies any information or evidence provided by him in the course of his assistance in the investigation; 2) move that the court reduce the offense level by three levels for Davies' acceptance of responsibility and timely notification to the government of his intention to enter a plea of guilty; 3) timely move to advise the court, if appropriate, of Davies' substantial assistance to law enforcement authorities in the investigation or prosecution of other persons; 4) and, in the event that a term of imprisonment was imposed upon Davies, recommend that he be placed in a secure institution. (Id. ¶¶ B.1, 3, 4, 6.)

Davies and the government (the "parties") agreed that the maximum penalties that may be imposed upon Davies with respect to count one were: a term of imprisonment of not more than thirty years; a fine of $250,000; a term of supervised release of at least five years and up to life; and a special assessment under 18 U.S.C. § 3013 of $100.00. (Id. ¶ C.1.(a)-(d).) The parties stipulated that: 1) the applicable sentencing guideline provision is United States Sentencing Commission § 2G1.3; 2) the base offense level shall be twenty-four; 3) a two-level increase applies because the offense involved a knowing misrepresentation of petitioner's identity; 4) a two-level increase applies because the offense involved the use of a computer to persuade, induce, or entice a minor to engage in sexually prohibited conduct; and 5) after a three-level reduction for petitioner's acceptance of responsibility, the resulting offense level is twenty-five. (Id. ¶ C.2.)

_____

(Plea Agm't ¶ 12.)

**B.      Change of Plea Hearing**

During his change of plea hearing in open court, petitioner informed the court that he wished to change the not guilty plea he previously entered at count one of the indictment at criminal number 07-436 to a plea of guilty.  (Change of Plea Hr'g Tr. 2.)  The court informed petitioner that before the court accepted petitioner's guilty plea, the court would ask petitioner a number of questions to assure the petitioner's guilty plea was valid.  (Id.)  The court requested petitioner to tell the court if he did not understand any of the questions or at any time wished to consult with his attorney, since it was essential to a valid plea that petitioner understand each question before he answered.  (Id.)

Petitioner informed the court that he was thirty-three years old, completed high school and some college, and spoke and understood English.  (Id. at 3.)  Petitioner informed the court that his medication and alcohol consumption within the last twenty-four hours was limited to his taking of anti-psychotic and anti-depressant medication, which did not impair his ability to understand anything but actually helped him function. (Id. at 4.)  Petitioner indicated that he understood that he was in court for the purpose of waiving his right to a jury trial and entering a guilty plea.  (Id. at 5.)

After Maknoon and the prosecutor each stated that neither had any doubt about petitioner's competence to plea at that time, the court found Davies competent to plead.  (Id.)  Davies affirmed on the record that he had ample time and opportunity to discuss the case with his attorney.  (Id.)  The court asked petitioner:

> THE COURT:  Are you fully satisfied with the counsel, representation, and advice given to you in this case by your attorney, Mr. Maknoon.
>
> THE DEFENDANT:  Yes, I am.

THE COURT: Mr. Davies, do you understand that you have the right to plead not guilty to any charge against you, and to persist or continue in the not guilty plea?

THE DEFENDANT: Yes, I understand.

THE COURT: In other words, do you understand that you do not have to change your plea?

THE DEFENDANT: I understand.

THE COURT: Do you understand, if you would continue to plead not guilty and do not change your plea, you would have the right to trial by jury?

THE DEFENDANT: I understand that.

(Id. at 5-6.)

The court asked petitioner whether he understood that if he continued to plead not guilty he had numerous rights, including, but not limited to: 1) plead not guilty and persist in that plea, 2) have an attorney provided at all phases of the processing of the charge at no cost to him if he could not afford an attorney, 3) have a speedy trial by a judge and jury on the charge against him contained in the indictment at criminal number 07-436, 4) petitioner's presumption of innocence at trial, 5) petitioner not having to prove his innocence, 6) the government having to prove his guilt by competent evidence beyond a reasonable doubt before petitioner could be found guilty, 7) a unanimous jury verdict in order to find petitioner guilty on the charge against him, 8) participate in jury selection, 9) call witnesses, 10) testify or not testify at trial, and 11) a jury trial. (Id. at 6-9.) Petitioner answered that he understood each of those rights. The court asked petitioner:

THE COURT: Mr. Davies, having discussed your rights with you, do you still wish to plead guilty?"

THE DEFENDANT: Yes, I do.

9

(Id. at 10.)

Petitioner affirmed that he discussed with his attorney the charge in the indictment to which he intended to plead guilty.  The court asked Davies:

> THE COURT:  Do you understand that you are charged in Count 1 of the indictment with travel with intent to engage in illicit sexual conduct on or about November 3rd, 2007, in violation of Title 18, United States Code, Sections 2423 (b) and (e)?
>
> THE DEFENDANT:  I understand.

(Id.)

The court confirmed that petitioner understood that the United States Sentencing Guidelines promulgated by the United States Sentencing Commission are advisory and are one of the factors the court would consider in determining petitioner's actual sentence.  (Id.)

The court asked petitioner if he discussed with his attorney how the sentencing  guidelines might apply in petitioner's case.  (Id. at 11.)  Petitioner responded, "Yes, I have."  (Id.)  Petitioner acknowledged that he understood that the court would not be able to determine the guideline range for his case until after the presentence report had been prepared and he and the government had an opportunity to challenge the reported facts.  (Id.)  The court asked petitioner if he understood that the sentence imposed may be different than the guideline range his attorney had discussed with him.  Petitioner responded, "I understand that."  (Id.)

Petitioner testified that he understood that he may have the right to appeal any sentence imposed by the court, unless he had waived that right by agreement. (Id. at 12.)  Petitioner also affirmed that he understood that "if the sentence imposed is more severe, meaning greater, than [he] expect[ed], [he] will still be bound by [his] guilty plea and will not be able to withdraw it[.]" (Id.)

The court explained to petitioner that the maximum penalties to count one are a term of imprisonment of not more than thirty years, a fine of $250,000, and a term of supervised release up to life. (Id. at 13.) Petitioner acknowledged to the court that he understood that he may be required to forfeit certain property to the government as part of his sentence. (Id.) Petitioner affirmed that he understood that if the court accepted his guilty plea, he would be adjudged guilty of a sex offense. (Id. at 14.) With respect to whether petitioner was forced in any way to plead guilty, and whether petitioner had entered into a plea agreement with the government, the court inquired:

> THE COURT: Mr. Davies, has anyone made a threat to you, or to anyone else, that has forced you in any way to now plead guilty?
>
> THE DEFENDANT: No, they haven't.
>
> THE COURT: You should understand, this Court may or may not approve any plea agreement which you may enter into. You have a duty to disclose the plea agreement now. If you do not do so, you may not later assert the existence of any plea negotiations or plea agreement.
>     Have you entered into a plea agreement with the government?
>
> THE DEFENDANT: Yes, I have.
>
> THE COURT: Did you have an opportunity to read and discuss the plea agreement with your attorney before you signed it?
>
> THE DEFENDANT: Yes, I did.
>
> THE COURT: Did you read each, and discuss each of the provisions of the plea agreement with your attorney?
>
> THE DEFENDANT: Yes, I did.
>
> THE COURT: Do you have any questions about the plea agreement at this time?
>
> THE DEFENDANT: No, I don't.

(Id. at 15-16.)

After requesting that the Plea Agreement be sealed, the prosecutor reviewed its terms.

(Id. at 16.)  With respect to the waiver by Davies of the right to attack collaterally his conviction

or sentence, the prosecutor stated :

> PROSECUTOR:  He's giving up, though, his right to attack either
> the sentence or the conviction under 28 United States Code,
> Section 2255, which would be a collateral attack on the sentence or
> the conviction.

(Id. at 19.)  The court stated:

> THE COURT:  I just want to ask you a few questions about that
> Mr. Davies.
> Do you understand that by entering into the plea agreement, you
> are giving up very significant rights - -
>
> THE DEFENDANT:  Yes, I do.
>
> THE COURT: - - with respect to your appeal and collateral attack.
> Do you understand that the only that the only three situations in
> which you could file an appeal; one, is if the government appeals.
> And there's no limitation to the government's right to appeal.
>
> THE DEFENDANT:  Yes.
>
> THE COURT: That's one of the circumstances. You understand that?
>
> THE DEFENDANT: Um-hum.
>
> THE COURT: The second is if the Court would impose a sentence
> beyond the statutory maximums.  Remember, we just went over
> that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: If the sentence would exceed the statutory
> maximum, you could file an appeal.
>
> THE DEFENDANT: Yes.

THE COURT: And the third situation is, after the Court determines your advisory guideline range, it's that Court determination, if the sentence unreasonably exceeds the Court's determination, then, you could appeal.

THE DEFENDANT: Okay.

THE COURT: Those are the only three situations. You understand that?

THE DEFENDANT: Yes.

THE COURT: You've totally given up, completely given up your right to come back at a later time and try to attack your sentence or your conviction.

THE DEFENDANT: Yes.

THE COURT: So, you understand that that means if you don't fall within one of the exceptions for an appeal, your sentence and conviction are final.

THE DEFENDANT: Yes.

(Id. at 19-21.)

At that point, petitioner's counsel requested permission from the court to ask his client a question which the court granted. Maknoon asked petitioner:

MR. MAKNOON: When we reviewed your plea agreement, did we specifically address the waivers of the rights to appeal?

THE DEFENDANT: Yes.

MR. MAKNOON: Okay.

THE COURT: Okay. Thank you.

MR. MAKNOON: Thank you.

(Id. at 21.)

The prosecutor noted the things that the government agreed to do in the Plea Agreement.

(Id.)  Petitioner's counsel acknowledged that the prosecutor correctly stated the terms of the Plea

Agreement.  (Id. at 24.)  The court asked petitioner:

> THE COURT: Okay. Mr. Davies, do you have any questions about
> the plea agreement at all?
>
> THE DEFENDANT: No.
>
> THE COURT: Did you hear the terms of the plea agreement that
> were reviewed for you by [the prosecutor]?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Did [the prosecutor] correctly state the terms of the
> plea agreement, as you understand them?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Any other questions about this?
>
> THE DEFENDANT: No.
>
> THE COURT: Is the entry into the plea agreement consistent with
> your attorney's advice?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Okay. Thank you.
>
> MR. MAKNOON: Thank you, Your Honor.

(Id. at 24-25.)  Petitioner affirmed that he understood that the terms of the Plea Agreement were

merely recommendations, which the court could reject, without permitting petitioner to withdraw

his plea, and impose a sentence that is greater than he expected.  (Id. at 25.)  The court inquired

whether anyone threatened petitioner or anyone else in any way to persuade him to accept the

Plea Agreement.  Petitioner responded, "no."  (Id. at 26.)  Immediately above petitioner's

signature on the plea agreement is the following acknowledgment:

14

> I have received this letter from my attorney, Komron Jon
> Maknoon, Esquire, have read it and discussed it with him, and I
> hereby accept it and acknowledge that it fully sets forth my
> agreement with the Office of the United States Attorney for the
> Western District of Pennsylvania. I affirm that there have been no
> additional promises or representations made to me by any agents or
> officials of the United States in connection with this matter.

(Plea Agm't 7.)

The court asked:

> THE COURT: Mr. Davies, did you commit travel with
> intent to engage in illicit sexual conduct on or about
> November 3rd, 2007, in violation of Title 18, United States
> Code, Sections 2423(b) and (e)?
>
> THE DEFENDANT: Yes.

(Id. at 27.)

The prosecutor reviewed the elements for the crime of travel with intent to engage

in illicit sexual conduct, in violation of 18 U.S.C. §§ 2423 (b) and (e) and stated that, if the case

went to trial, the government must show that petitioner: 1) traveled in interstate commerce; and

2) with the intent to engage in illicit sexual conduct. (Id. at 27-28.) At trial the government

would ask the court to take judicial notice of the fact that in either Pennsylvania or Ohio, sex

with a minor would be illegal. (Id. at 28.) Petitioner acknowledged that he understood the

elements of the offense and that he did not have any questions about them. (Id.) The prosecutor

reviewed the government's evidence as to count 1 - as set forth in the factual background section

of this opinion. After agreeing with the prosecutor's summary, petitioner affirmed that he still

wanted to plead guilty:

> COURT: Mr. Davies, did you hear what the prosecution said you
> did?
>
> DEFENDANT: Yes.

15

COURT:  Did you agree with the prosecution's summary of what
you did?

DEFENDANT: Yes.

THE COURT: Do you still wish to plead guilty?

THE DEFENDANT: Yes.

THE COURT: Mr. Maknoon, is the entry of the guilty
plea consistent with your advice?

MR. MAKNOON: Yes, it is, Your Honor.

(Id. at 32.)  The court accepted petitioner's guilty plea and stated:

THE COURT: Mr. Davies, since you acknowledge you're,
in fact, guilty as charged, since you know your right to a
trial, since you know what the maximum possible penalties are,
and since you are voluntarily pleading guilty, the Court
accepts your guilty plea and hereby enters a judgment of
guilty on your plea.

(Id. at 33-34.)  Petitioner and Maknoon signed the change of plea form.  (Id. at 34.)

The court informed petitioner that it would be ordering a presentence investigation

report and that the report would be important to the court in determining petitioner's actual

sentence.  (Id. at 34.)  The court noted that petitioner, his attorney, and the government would

have the opportunity to present information to the court concerning matters in the report which

are disputed.  (Id. at 35.)  Petitioner was released on bond to the custody of his parents.  (Id. at

37-48.)

C.      Sentencing Hearing

During  petitioner's sentencing hearing, petitioner acknowledged that he read the

presentence report and addendum prepared by the United States probation office with respect to

his case and reviewed them with his attorney.  (Sent. Hr'g Tr. 2-3, Oct. 9, 2009.)  Petitioner

acknowledged that he reviewed the court's tentative findings setting forth the court's tentative determination about the applicable advisory sentencing guideline range that would apply in his case.  (Id. at 3.)  After affirming there were no objections to the court's tentative findings that affected the guideline range, the court adopted its tentative findings and rulings.  (Id. at 3-4.)

The court noted that the government filed a motion pursuant to § 5K1.1 (the "5K Motion") of the United States Sentencing Commission Guidelines.  (Id. at 6.)  The prosecutor stated that the government believed that petitioner warranted the 5K Motion and that it was appropriate to discuss it in open court.  (Id. at 6-8.)  After hearing the underlying facts and circumstances, the court granted the motion. (Id. at 9.)

The advisory guideline range for petitioner's offense is 63-78 months.  (Id. at 43.)  With respect to the government's position regarding sentence, the prosecutor stated, "I think Mr. Davies starts at a guideline range that's above the bottom.  Then, of course, you have to credit the 5K conduct."  (Id. at 37.)  Regarding the forfeiture provision of the plea agreement, the prosecutor informed the court that the forfeiture should pertain only to the Dell Dimension desk top computer and the Seagate external hard drive.  The government was releasing the computer, XPS 400, which belonged to petitioner's father and was not found to contain any contraband.  (Id. at 39.)  Petitioner addressed the court directly, stating:

> Yes. I'd like to say a couple things.
>
> ***
> I will read my statement, which is very short.
>
> ***
> Yes, I traveled across state lines for a specific purpose, but once I
> arrived, I just enjoyed their company, which is why I made no

sexual advances, made no sexual conversation while I was there. I just wanted the company once I was there. However, this is no excuse for my actions. What I did was against the law.  It was immoral and it was completely wrong.

> After doing much of the research in my case, I have gained an appreciation and a respect for the law that I never realized I had before. I understand the Court, the government and the defense attorney's jobs, I don't blame anybody in this -- involved in this case from the government's perspective because if it wasn't for my actions, they wouldn't have to pick me up, so I blame nobody but myself.

(Id. at 44, 46-47.)

The court sentenced petitioner to time served - nineteen months - and supervised release for life. The sentence of time served departed from the advisory guideline range for a reason - the 5K motion - authorized by the sentencing guidelines manual. (Id. at 51, 61, 64.) In determining the sentence, the court explained that it considered the need to reflect the seriousness of the offense, respect for the law and provide just punishment for the offense. The court believed the sentence addressed the goals of punishment, rehabilitation and deterrence. (Id. at 59, 64-65.) The court informed petitioner that the 5K motion was the "overarching reason for the reduction in the time of imprisonment because it is a serious offense." (Id. at 62.)

The court explained to petitioner his appeal rights.

> THE COURT: Mr. Davies, I'm going to review your rights to an appeal, but do you understand that because of the plea agreement, you've given up in a very significant way your right to appeal. You've totally given up your right to collaterally attack the sentence. You remember that, don't you.
>
> DEFENDANT: Yes, I do.

(Id. at 65.)

The court informed petitioner of the time limitation regarding appeal:

> With few exceptions, any notice of appeal must be filed within ten days of judgment being entered in your case. If you are unable to pay the costs of an appeal, you may apply for leave to appeal in forma pauperis. If you so request, the Clerk of Court will prepare and file a notice of appeal on your behalf.

18

(Id. at 65-66.)

**D.    The Motion**

On February 5, 2010, petitioner filed his § 2255 Motion and a brief in support listing three arguments: (1) the statements made by him and by the two victims were obtained in violation of his Fourth Amendment rights because he was arrested without probable cause,  (2) that his counsel was ineffective for failing to litigate suppression of evidence issues, and 3) the indictment failed to state essential facts giving rise to the charge.  (Mot. ¶ 12.)

On April 5, 2010, the government filed its response in opposition to the § 2255 Motion requesting that this court deny, without a hearing, petitioner's § 2255 Motion by reason, among others, of petitioner having waived his right to attack collaterally his sentence.  On April 19, 2010, the petitioner filed a reply to the government's response, essentially reiterating the same facts and arguments set forth in his initial motion.

**II.    Standard of Review**

A district court is required to hold an evidentiary hearing on a motion to vacate sentence filed pursuant to 28 U.S.C. § 2255 unless the motion, files and records of the case show conclusively that the movant is not entitled to relief.  28 U.S.C. § 2255 ("Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."); United States v. Booth, 432 F.3d 542, 545-46 (3d Cir. 2005).  An evidentiary hearing is not required, however, if the court determines that the motion, files and records of the case conclusively support that the motion shall be denied as a matter of law.  Id.

19

Under 28 U.S.C. § 2255, a federal prisoner in custody may move the court which imposed the sentence to vacate, set aside or correct the sentence upon the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255; see Hill v. United States, 368 U.S. 424, 426-27 (1962) (reading the statute as stating four grounds upon which relief can be claimed).

The statute provides as a remedy for a sentence imposed in violation of law that "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

## III. Discussion

### A. Need for a Hearing

A district court need not hold an evidentiary hearing to determine the merits of a § 2255 motion to vacate, set aside or correct a sentence if the record conclusively establishes that the movant is not entitled to the relief sought in that motion. See United States v. Dawson, 857 F.2d 923, 927 (3d Cir. 1988). Rule 4(b) of the Rules Governing § 2255 Proceedings provides that: "If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the [§ 2255] motion and direct the clerk to notify the moving party." RULES GOVERNING § 2255 PROCEEDINGS 4(b). The baseline the movant must meet to receive an evidentiary hearing is considered to be low. Booth, 432 F.3d at 546. The Advisory Committee Notes as to Rule 4 further clarify that "[s]ince the motion is part of the criminal action in which was entered the judgment to which [the motion] is directed, the files, records, transcripts, and correspondence relating to that judgment are

automatically available to the judge in [her] consideration of the motion." RULES GOVERNING §
2255 PROCEEDINGS 4(b) advisory committee's notes.

Although the threshold is low, defendant is not entitled to an evidentiary hearing in this
case. For the reasons that follow, the evidence of record conclusively demonstrates that this
court should not grant relief to defendant on his § 2255 motion. Petitioner's motion is predicated
upon the grounds that his sentence was imposed in violation of the Constitution or laws of the
United States, i.e., his Fourth Amendment right to be free from arrest absent probable cause, his
Sixth Amendment right to effective assistance of counsel, and his right to be informed in the
indictment of the essential facts giving rise to his charge.

The government argues that the merits of petitioner's claim should not be reached by the
court because petitioner's § 2255 Motion should be dismissed on the basis that he waived his
right to file a collateral challenge in his Plea Agreement and that waiver should be enforced. The
government emphasizes that Davies knowingly and voluntarily entered his guilty plea on the
record, in open court, following a colloquy with the court and a recitation of the underlying facts
of the investigation and terms of the Plea Agreement. The court agrees.

**B.      The Knowing and Voluntary Nature of Petitioner's Waiver of His Right to
         Attack Collaterally His Sentence**

Criminal defendants may waive the right to file a motion to vacate, set aside, or correct a
sentence under § 2255. The waiver, however, will be enforced only if it is knowing and
voluntary. United States v. Mabry, 536 F.3d 231, 237 (3d Cir. 2008); United States v. Gwinnett,
483 F.3d 200, 205 (3d Cir. 2007); United States v. Clive, No. 05-0383, 2008 WL 3889726, at
**6-7 (W.D. Pa. Aug. 19, 2008). If the waiver is enforceable, the court refrains from exercising
subject-matter jurisdiction to consider the merits of the motion, unless the result would work a

miscarriage of justice.  <u>Mabry</u>, 536 F.3d at 237 n.4; <u>United States v. Khattak</u>, 273 F.3d 557, 563

(3d Cir. 2001).

    With respect to a waiver of the right to appeal and to attack collaterally a sentence,

Federal Rule of Criminal Procedure 11(b)(1)(N) requires that a court address the defendant

during the plea hearing and inform the defendant that he is waiving the right to appeal and to

attack collaterally the sentence and to determine that the defendant understands the waiver.  It

provides in pertinent part:

> Before the court accepts a plea of guilty . . . the court must address
> the defendant personally in open court.  During this address, the
> court must inform the defendant of, and determine that the
> defendant understands the following: . . .(N) the terms of any plea-
> agreement provision waiving the right to appeal or to collaterally
> attack the sentence.

Fed. R. Crim. P. 11(b)(1)(N).  A defendant claiming that a waiver should be unenforceable due

to an inadequate hearing colloquy has the burden of satisfying the plain error standard.  <u>United

States v. Goodson</u>, 544 F.3d 529, 539 (3d Cir. 2008).  To satisfy this burden, the defendant must

prove "(1) error, (2) that is plain and obvious, and (3) that affects a defendant's substantial

rights."  <u>Id.</u> (citing <u>Johnson v. United States</u>, 520 U.S. 461, 467 (1997); <u>United States v. Olano</u>,

507 U.S. 725, 732 (1993)).

    In <u>Goodson</u>, the defendant and the government entered into a plea agreement, in which

the defendant agreed, inter alia, (1) to plead guilty to one count of wire fraud, (2) to waive his

right to indictment and plead guilty to two counts of an information charging him with making

counterfeit checks, and (3) to waive his right to take an appeal from his conviction or sentence

and his right to attack collaterally his sentence.  The defendant executed an acknowledgment on

the final page of the plea agreement, indicating that he read the agreement, discussed it with

counsel, and accepted its terms.  His counsel witnessed his execution of the acknowledgment.  Id. at 531-32.  On the next day, a change of plea hearing was held.  At the hearing, the court noted the existence of the plea agreement, and asked the government to review the provisions of the agreement.  The Assistant United States Attorney stated:

> There is a waiver provision in the plea agreement that deals with him waiving his right to take a direct appeal from his conviction.  There are certain exceptions that are specified in the agreement which would permit him to take an appeal under those circumstances.  He also agrees to the waiver of his right to file a 28 U.S.C. § 2255 motion.

Id. at 532.

After the statement, the court asked the defendant if he heard the government's summary of the terms of the agreement.  The defendant responded affirmatively, and the court then asked if he understood the agreement.  The defendant affirmatively responded.  Id. at 532.  Later in the hearing, the court asked:

> Court: Do you understand that under certain circumstances, this relates to what you have given up in the plea agreement, you or the government may have the right to appeal any sentence that I may impose?
>
> Defendant: Yes, Your Honor.

Id.

At the conclusion of the hearing, the defendant pled guilty to the charges.  The judge found the pleas were knowing and voluntary.  After the court sentenced him to twenty-seven months of imprisonment, the defendant timely appealed.  The government responded that the defendant knowingly waived his right to appeal his sentence.  Id. at 532-33.

The Court of Appeals for the Third Circuit considered the entire record in Goodson, and held that the district court's reliance on the government to recite the terms of the plea agreement,

including the appellate waiver, was obvious error in light of the requirements of Rule 11(b)(1)(N) that mandate the court inform the defendant about those terms of the agreement relating to the waiver of the right to appeal and collaterally to attack the sentence.  Id. at 539.  The court of appeals also held that the district court plainly erred in failing to verify that the defendant understood the breadth of the waiver and the various exceptions provided for by the plea agreement.  Id.

Despite the obvious errors, the court of appeals held that the defendant failed to meet his burden of demonstrating the third element of the plain error rule: "that the deficient colloquy affected his substantial rights by precluding him from knowing of and understanding the significance of the binding appellate waiver in the plea agreement."  Id. at 540.  The court of appeals noted evidence that the defendant was college educated, he successfully perpetrated fraud, he could read and comprehend the plea letter and its terms, the district court discussed the possible punishment at the plea hearing, the government discussed the appellate waiver in general terms at the plea hearing, and the defendant told the court that he understood his right to appeal was limited.  The court of appeals noted that the defendant signed the acknowledgment on the final page of the plea agreement.  The court of appeals concluded that under the circumstances, the defendant did not meet his burden of proving his substantial rights were affected.  Id. at 541.

Distinct from the facts in Goodson, the Rule 11 colloquy in this case was adequate.  Here, the court did not rely upon the government to explain petitioner's waiver of his appellate rights and his right to attack collaterally his sentence, which was contained in the Plea Agreement.  The court personally addressed petitioner regarding those rights and specifically asked him whether he understood the waiver of those rights, and the breadth of the waiver and the exceptions.

Under these circumstances, there is no plain or obvious error in light of the requirements of Rule 11(b)(1)(N).

Even if the Rule 11 colloquy in this case was inadequate, the record demonstrates that petitioner's substantial rights were not affected. During Davies'change of plea hearing the court asked him whether he understood that he may have the right to appeal any sentence imposed, "unless you have agreed to limit or waive your rights to an appeal in a plea agreement". (Tr. Hr'g Change Plea 12.) Davies responded: "I understand." (Id.) At that hearing, petitioner informed the court that he graduated from high school, attended college, was able to speak and understand the English language. Petitioner acknowledged that he had taken medication for mental health issues within the previous twenty-four hours, but that the medication did not impair his ability to understand. Petitioner testified that no one forced him in any way to enter a guilty plea to the felony charges. Plaintiff informed the court that he was fully satisfied with the service, advice and representation provided by his attorney. (Id. at 5-6.) Petitioner affirmed that: 1) petitioner had reviewed with his attorney the charge to which petitioner was pleading guilty; 2) petitioner understood the charge against him; and 3) the prosecutor correctly stated the terms of the Plea Agreement as petitioner understood them. Petitioner signed his signature below an acknowledgment on the Plea Agreement that he read the Plea Agreement and discussed it with his attorney and petitioner's attorney also signed the Plea Agreement.

At the sentencing hearing, Davies and his attorney affirmed that neither had any objections to the presentence investigation report which affected the sentencing guidelines. At that hearing, petitioner affirmed that he understood that due to the Plea Agreement he had given up, "in a very significant way [his] right to appeal." (Tr. Hr'g Sent. 65.) The court inquired,

"[y]ou've totally given up your right to collaterally attack the sentence. You remember that, don't you?" Petitioner responded, "[y]es, I do." (Id.)

Under those circumstances and after reviewing the record, the court concludes that Davies cannot meet his burden of proving that the Rule 11 colloquy was deficient or precluded him in any way from understanding he had the right to file a § 2255 motion and that he agreed to waive that right. See Mabry, 536 F.3d at 242-44 (concluding that analysis of plain error rule applies to waiver of right to file a § 2255 motion). The waiver is therefore enforceable, as long as enforcement of the waiver does not amount to a miscarriage of justice.

### C.    Miscarriage of Justice

The court looks to the underlying facts to determine whether enforcing the waiver would give rise to a miscarriage of justice. Mabry, 536 F.3d at 243. Relevant factors include:

> "the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result" . . . .

Id. at 242-43 (quoting United States v. Teeter, 257 F.3d 14, 25-26 (1st Cir. 2001)).

In Mabry, the defendant filed a § 2255 motion, although he waived the right to appeal and attack collaterally a sentence pursuant to a plea agreement. In the motion, the defendant argued that he was provided with ineffective assistance of counsel. The defendant asserted that he instructed his attorney to challenge the calculation of his sentence under the sentencing guidelines on appeal. The attorney did not appeal the defendant's sentence, despite the request to do so. Id. at 233-35. The court of appeals determined that the defendant's waiver of his right to appeal and challenge collaterally his sentence was knowing and voluntary. Id. at 237-39. The court of appeals analyzed whether the waiver barred consideration of his § 2255 motion and

precluded relief on the merits of his claim that defense counsel rendered ineffective assistance of counsel by failing to appeal despite being instructed to do so.  Id. at 240-41.  The court of appeals held that a defendant who has waived the right to file a § 2255 motion cannot bring such a motion unless the waiver was (1) not knowing and voluntary, or (2) enforcement of the waiver would work a miscarriage of justice.  Id.  Miscarriage of justice and prejudice are not presumed where a defendant waived the right to attack collaterally a sentence.  Id. at 242.

In analyzing whether the facts of the case demonstrated that the defendant suffered a miscarriage of justice, the court of appeals in Mabry cited United States v. Wilson, 429 F.3d 455 (3d Cir. 2005) (stating that enforcing a waiver in connection with a coerced plea would work a miscarriage of justice).  Mabry, 536 F.3d at 243.  The court of appeals in Mabry determined that the defendant in that case was not coerced into entering the plea agreement and that the defendant in Mabry did not suffer a miscarriage of justice by the attorney's failure to appeal, since the defendant requested his counsel appeal the calculation of the defendant's sentence under the sentencing guidelines, and the waiver barred the right to appeal the calculation.  Id.  The court of appeals noted that although the waiver seemed "particularly one-sided and unusually broad," the government agreed to not pursue a mandatory consecutive term of imprisonment of five years in consideration for the provisions of the plea agreement.  Id. at 243 n.16.  Based upon the circumstances of the case, the court of appeals concluded that "[e]nforcing the waiver is in line with justice, not a miscarriage of it."  Id. at 244.

The court of appeals in Mabry distinguished its holding in United States v. Shedrick, 493 F.3d 292, 303 (3d Cir. 2007),  where the court held that the enforcement of a waiver barring an ineffective assistance of counsel claim on collateral attack resulted in a miscarriage of justice.  In Shedrick, the defense counsel refused the defendant's request to pursue an appeal on the ground

that the sentencing court erroneously departed upward from the applicable sentencing guideline range, even though the defendant specifically retained the right to appeal a sentence in which the sentencing court erroneously departed upward.  Mabry, 536 F.3d at 243.

Waivers are meant to "preserve the finality of judgments and sentences imposed pursuant to valid pleas of guilty."  Khattak, 273 F.3d at 561.  In addition to prolonging litigation, allowing defendants to later retract an otherwise valid waiver would give them "the benefits of their agreements while shielding them from their self-imposed burdens."  Id.  Further, waivers of the right to appeal may extend to meritorious claims.  Id.  A waiver of the right to appeal must logically extend to an appeal of difficult or debatable legal issues; otherwise, the waiver would be nearly meaningless if it included only matters that border on the frivolous.  Id. at 562.  Here, petitioner knowingly and voluntarily entered into the Plea Agreement after negotiations took place between his attorney and the government's attorney.  Under the Plea Agreement petitioner agreed, among other things, to plead guilty to a felony charge.  The government agreed to move that the offense level be reduced for petitioner's acceptance of responsibility and to consider filing a 5K motion for substantial assistance to the government - which it did.  The Plea Agreement set forth various stipulations agreed to by both parties and set forth the applicable maximum penalties which could be imposed on petitioner.  The court informed petitioner that the court was not bound by the terms of the Plea Agreement and that petitioner could be sentenced up to thirty years imprisonment, $250,000.00, and a lifetime of supervised release.

Most significant, the Plea Agreement contained an express waiver of plaintiff's right to attack collaterally his sentence, which was reviewed in open court.  Petitioner benefitted from the Plea Agreement, particularly with respect to the government's filing of a 5K1.1 motion for substantial assistance, which warranted the court varying significantly from the low end of the

sentencing guideline range, i.e., sixty-three months. Although petitioner was sentenced to the maximum term of supervised release - which was consistent with the policy statement contained in § 5D1.2(b)(2) United States Sentencing Commission Guidelines - he was sentenced to time served of nineteen months.

Enforcing petitioner's waiver of his right to file to a § 2255 motion does not work a miscarriage of justice because petitioner knowingly and voluntarily entered into the Plea Agreement. He was not coerced into entering the Plea Agreement. Petitioner's receipt of the benefits of the Plea Agreement, particularly the government's agreement to consider filing a 5K motion - as it did - constitutes valuable consideration for the waiver. Because petitioner's waiver is enforceable, the court refrains from exercising subject-matter jurisdiction.

**D.      Conclusion**

Petitioner  waiver of his right to file a § 2255 motion is enforceable because the waiver in his Plea Agreement was knowing and voluntary and will not give rise a miscarriage of justice. The records of the case show conclusively that Davies is not entitled to relief. Therefore, petitioner's § 2255 Motion with respect to criminal number 07- 436 will be denied. In light of the enforceability of Davies' waiver of the right to file a § 2255 motion, there is no reason to conduct an evidentiary hearing to consider the merits of petitioner's claim that his rights under the laws of the United States or the Constitution were violated.[5]

---

[5] Because the court finds that petitioner waived his right to attack collaterally his sentence, it is not required to address the merits of petitioner's claims of violations of the laws of the United States and the Constitution. Nonetheless, the court notes that petitioner's claims are without legal merit. Petitioner argues that his counsel was ineffective for failing to litigate a motion to suppress evidence which petitioner claims was obtained without probable cause for his underlying arrest. Davies admits that Maknoon disagreed with his theory that the government did not have evidence to convict him. (Petr.'s Br. 3.)

To establish ineffective assistance of counsel in violation of the Sixth Amendment,

petitioner must prove (1) deficient representation, meaning that counsel's representation fell below an objective standard of reasonableness; and (2) prejudice, meaning that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88, 694 (1984); <u>Williams v. Taylor</u>, 529 U.S. 362, 390-91 (2000). Concerning the prejudice prong, a "reasonable probability" is a probability sufficient to undermine confidence in the outcome." <u>Williams v. Taylor</u>, 529 U.S. at 390-91.

 The United States Court of Appeals for the Third Circuit has directed courts to address the prejudice prong of the analysis first. <u>See</u> <u>McAleese v. Mazurkiewicz</u>, 1 F.3d 159, 170 (3d Cir.), <u>cert. denied</u>, 510 U.S. 1028 (1993) ("'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.'") (quoting <u>Strickland</u>, 466 U.S. at 697). To establish prejudice, Davies must show that there is a reasonable probability that, but for Maknoon's unprofessional errors, the result of the proceeding would have been different. <u>See</u> <u>Strickland</u>, 466 U.S. at 694. Here, petitioner's claim rests on an alleged disagreement he had with Maknoon about filing a motion to suppress statements obtained by the government as a result of the underlying arrest which allegedly lacked probable cause. Davies would have to show that he would likely have prevailed on the suppression motion and that, having prevailed, there is a reasonable likelihood that the result of his sentence would have been different. <u>See</u> <u>Thomas v. Varner</u>, 428 F.3d 491, 502 (3d Cir. 2005). Given the facts of record, the court finds petitioner's claim that the arresting officer lacked probable cause to arrest him under the facts and circumstances untenable. <u>See</u> <u>Beck v. Ohio</u>, 379 U.S. 89, 91 (1964) (finding that probable cause turns on whether, at that moment of the arrest, the facts and circumstances within the arresting officers' knowledge of "reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense").

 Here, the record shows that the arresting officer found suspicious petitioner's behavior related to standing alongside a vehicle with two young female teenagers at 12:45 a.m. in the morning in a rural area. Petitioner concedes that, under the circumstances, the officer had justification under <u>Terry v. Ohio</u>, 392 U.S. 1 (1968), to stop and investigate whether criminal activity might be afoot. Upon questioning the teenagers, the officer had reasonably trustworthy information to believe that petitioner had committed an offense. Maknoon's refusal to file a motion for suppression of any subsequent statements of petitioner or the teenagers - whether on the basis of a determination that it would be frivolous or purely strategical - cannot be said to have prejudiced petitioner in his sentence. Petitioner was fully informed that he was facing up to thirty years imprisonment and a lifetime of supervised release.

 Petitioner's claims that the indictment failed to set forth the essential facts that gave rise to the charge is equally unavailing. "'No greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution.'" <u>United States v. Saybolt</u>, 577 F.3d 195, 205 (3d Cir. 2009) (quoting <u>United States v. Kemp</u>, 500 F.3d 257, 280 (3d Cir. 2007). Here, the indictment memorandum set forth the elements of the offense and defendant testified at the change of plea hearing that he understood the elements. He admitted the government's summary of the evidence against him was correct. Petitioner was represented

As a result, petitioner's motions for appointment of counsel and for release and stay of supervised release are denied as moot.

## IV.     Certificate of Appealability

When a district court issues a final order denying a § 2255 motion, the court must also make a determination about whether a certificate of appealability ("COA") should issue. Otherwise, the clerk of the court of appeals shall remand the case to the district court for a prompt determination as to whether a certificate should issue.  <u>See</u> 3rd Cir. LAR 22.2.

> When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

<u>Slack v. McDaniel</u>, 529 U.S. 473, 484-85 (2000).

Based upon the § 2255 Motion, files and records of the instant case, and for the reasons set forth herein, the court finds that petitioner has not shown a substantial denial of a constitutional right.   Therefore, a COA should not issue.

## V.     Order

AND NOW, this 24th day of June, 2010, upon consideration of petitioner's § 2255 Motion (Docket No. 85), the Plea Agreement, the transcript of petitioner's sentencing hearing, the transcript of petitioner's change of plea hearing, and the parties' submissions, IT IS HEREBY ORDERED that petitioner's motion to vacate, set aside, or correct sentence by a person in federal

---

by counsel, affirmed that he did not have any questions with respect to the charge in the indictment, and admitted repeatedly that he was guilty of the offense as charged.  Under these circumstances, the court cannot find that Davies' rights were violated by an alleged deficient indictment.

custody pursuant to 28 U.S.C. § 2255 is DENIED.  IT IS FURTHER ORDERED that no

certificate of appealability should issue.  IT IS FURTHER ORDERED that petitioner's motion to

appoint counsel (Docket No. 99) and petitioner's motion for release from sentence and stay of

supervised release pending the § 2255 Motion decision (Docket No. 101) are denied as moot.


By the court,

/s/ JOY FLOWERS CONTI
Joy Flowers Conti
United States District Judge



cc:     Robert Davies
        7455 Harmon Road.
        Conneaut, Ohio 44030