IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA, | ) | |
| --- | --- | --- |
| | ) | |
| v. | ) | Criminal No. 07-436 |
| | ) | |
| ROBERT DAVIES | ) | |
| Petitioner | ) | |

## OPINION

CONTI, Chief District Judge

### I.     Introduction

On December 18, 2007, a federal grand jury returned a one-count indictment charging petitioner Robert Davies ("petitioner") with knowingly traveling in interstate commerce for the purpose of engaging in illicit sexual conduct with another person, as defined in 18 U.S.C. § 2423(f)(1), in violation of 18 U.S.C. § 2423 (b) and (e). (ECF No. 14.) On May 27, 2009, petitioner pleaded guilty to count one of the indictment. On October 16, 2009, petitioner—after spending nineteen months incarcerated—was sentenced to a term of imprisonment of time served and a lifetime term of supervised release, with all conditions of release outlined. (ECF Nos. 75, 76, 79.) Petitioner previously filed two § 2255 motions with this court (ECF Nos. 85, 110), which the court denied (ECF Nos. 103, 181.) Petitioner appealed each of the court's decisions denying his § 2255 motions, and the Third Circuit Court of Appeals declined to issue a certificate of appealability with respect to either of those motions. (ECF Nos. 108, 189.) Petitioner has also filed other post-conviction motions, which the court has denied or denied as moot. (ECF Nos. 110, 121, 123, 125, 172, 179, 186, 188, 190, 194, 196, 202, 203, 208, 209, 256.)

Currently pending before the court are four motions filed by petitioner: (1) a motion for recusal of presiding judge (ECF No. 274); (2) a motion to terminate or modify conditions of supervised release (ECF No. 265); (3) a motion to strike (ECF No. 271); and (4) a motion to appoint counsel (ECF No. 266). For the reasons stated herein, and the motion for recusal of presiding judge will be denied, the motion to terminate supervised release will be denied, the motion to appoint counsel will be denied, and the motion to strike will be denied as moot.

II. **Motion for recusal of presiding judge (ECF No. 274)**

Petitioner in his motion for recusal of presiding judge argues that the undersigned judge should recuse from this case because she has "alter[ed] facts adduced and opinions…to avoid vacating Defendant's conviction and sentence[,]" which "displays a deep-seated favoritism toward the government or antagonism toward Defendant that makes fair judgment impossible." (ECF No. 274 at 8.) Specifically, petitioner argues for recusal because the undersigned judge:

(1) after petitioner pleaded guilty, denied his pro-se motion to suppress, which was filed when petitioner was represented by counsel (id. ¶ 12);

(2) denied petitioner's first motion filed under 28 U.S.C. § 2255 because petitioner failed to show that his *sentence* would have been different if his counsel had filed a motion to suppress, and, therefore, "rewrote" the law "to prevent Defendant from meeting the _real_ burden of proof" (id. ¶¶ 13, 14);

(3) relied upon "irrelevant events" when it denied petitioner's section § 2255 motion (id. ¶ 15);

(4) denied petitioner's motion for return of property even though forfeiture was not noticed in the indictment and his computer did not contain child pornography (ECF No. 274 ¶ 18);

(5) at the time of sentencing did not determine whether images found on petitioner's computer were child pornography (id. ¶¶ 19-20);

(6) did not grant petitioner's request in his second § 2255 motion to vacate his sentence even though one of his prior state court convictions was vacated (id. ¶ 21);

(7) did not vacate petitioner's sentence, which was based in part on his need for medication, even though he presented evidence that he no longer requires medication (id. ¶¶ 21-22); and

(8) misunderstood petitioner's claims of fraud against the assistant United States attorney who prosecuted his case and did not resolve the argument actually made by petitioner (id. ¶ 23.)

The statute governing judicial disqualification provides, in pertinent part:

(a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

28 U.S.C. § 455(a). The test for disqualification pursuant to § 455(a) is "whether a reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned." In re Kensington Int'l Ltd., 353 F.3d 211, 220 (3d Cir. 2003). "It is 'vital to the integrity of the system of justice that a judge not recuse himself on unsupported, irrational or highly tenuous speculation.'" Pondexter v. Allegheny Cnty. Housing Auth., Civ. No. 11-857, 2012 WL 1621370, at *2 (W.D. Pa. May 9, 2012) (quoting McCann v. Commc'ns Design Corp., 775 F. Supp. 1506, 1523 (D. Conn. 1991) (alteration in original)). A court's "rulings alone almost never constitute a valid basis for a bias or partiality motion." Liteky v. United States, 510 U.S. 540, 555 (1994). The Supreme Court has explained:

[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion. See United States v. Grinnell Corp., 384 U.S., at 583, 86

3

S.Ct., at 1710. In and of themselves ( i.e., apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required (as discussed below) when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal.

Liteky, 510 U.S. at 555.

All the arguments raised by petitioner are attacks on the undersigned judge's judicial rulings. Petitioner's arguments do not show a degree of favoritism or antagonism that is required for recusal. Under those circumstances, a reasonable person with knowledge of all the facts would not conclude that the undersigned judge's impartiality might reasonably be questioned in this case. Petitioner's motion for recusal (ECF No. 274) will, therefore, be denied.

### III. Motion to Terminate Supervised Release (ECF No. 265)

#### A. Consideration of certain enumerated factors in 18 U.S.C. § 3553(a)

Petitioner requests the court to terminate the lifetime term of supervised release under 18 U.S.C. § 3583(e)(1) or, in the alternative, modify the conditions of release under 18 U.S.C. § 3583(e)(2). (ECF No. 265 at 1.) After considering certain enumerated factors in 18 U.S.C. § 3553(a), the court may,

> terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice
>
> [or]…
>
> modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release,

pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision

18 U.S.C. § 3583(e)(1).[1]

The pertinent § 3553(a) factors the court must consider before terminating the term of supervised release or modifying the conditions of release are:

- the nature and circumstances of the offense and the history and characteristics of the defendant, § 3553(a)(1);

- the need for the sentence imposed to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, §§ 3553(a)(2)(B)–(D);

---

[1] Federal Rule of Criminal Procedure 32.1 addresses the procedures to be used to modify conditions of supervision. Rule 32.1(c) provides:

> (c) Modification.
> (1) In General. Before modifying the conditions of probation or supervised release, the court must hold a hearing, at which the person has the right to counsel and an opportunity to make a statement and present any information in mitigation.
>
> (2) Exceptions. A hearing is not required if:
>
> (A) the person waives the hearing; or
>
> (B) the relief sought is favorable to the person and does not extend the term of probation or of supervised release; and
>
> (C) an attorney for the government has received notice of the relief sought, has had a reasonable opportunity to object, and has not done so.

FED. R. CRIM. P. 32(c)(1). Here, the court for the reasons set forth in this opinion refuses to modify petitioner's conditions of supervision. Rule 32.1 "not compel the court to hold a hearing before refusing a request for modification." United States v. Nonahal, 338 F.3d 668, 671 (7th Cir. 2003).

5

- the sentencing range established by the Sentencing Commission, § 3553(a)(4);

- any pertinent policy statement issued by the Sentencing Commission, § 3553(a)(5);

- the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, § 3553(a)(6); and

- the need to provide restitution to any victims of the offense, § 3553(a)(7).

The court will consider the pertinent factors set forth in § 3553(a), and then determine whether defendant is entitled to early termination of supervision or modification of the conditions of release.

***(1) The nature and circumstances of the offense and the history and characteristics of the defendant, § 3553(a)(1)*:** Petitioner in this case pleaded guilty to "travel with intent to engage in illicit sexual conduct on or about November 3, 2007, a violation of 18 U.S.C. § 2423(b) and (e), which included admitting to: pretending he was 19 years old, when in fact he was 32 years old, and engaging in a salacious sexual discussion, including discussion about engaging in sexual acts with horses, with two minor females via the internet in a "preteen" chat room; engaging in a sexual discussion with one of the minors via the telephone; driving from Conneaut, Ohio, to Washington, Pennsylvania, to one of the minor's home where the two minors got into petitioner's car; and driving the minors and himself to a horse farm in Cecil Township, Pennsylvania, where they were encountered by law enforcement.[2] (H.T. 7/27/2009 (ECF No. 98) at 28-32.) Petitioner also agreed that the

---

[2] At the change of plea hearing in this case, petitioner agreed with the following summary of his conduct in this case, which was offered by the government:

If we had a trial we would show that the investigation began on November 4th of 2007. Cecil Township Police Richard Egizio was on patrol. It was approximately 12:45 a.m. He was responding to another call, and he noticed at that time a vehicle pulled off the side of Klinger Road with three individuals standing outside that car. He went on and responded to that call, but took note of that car, and on return, he went to the Klinger Road location and checked on that car, because he had deemed it suspicious.

The driver of the car was identified as Robert Davies of Conneaut, Ohio. The two passengers were minor female children, age 14 and 15, who reside in the city of Washington, Pennsylvania. The minor children claimed to have met Mr. Davies that very evening, and they further explained that he had told them that he was 19 years old, despite his actual age of 32 years. After being transported to the Cecil Township Police station, the minors' parents were contacted, and the minors were interviewed in greater detail. The minors reported that while they were both at the home of the 14-year-old, they had been using the computer to talk to, to guys, and that's in quotes, on a pre-teen chat site. The 14-year-old primarily engaged in chatting, although the 15-year-old was also present…..

[sic] The course of the chatting, they encountered an individual who identified himself on screen as, true 2 -- that's the number two -- self, and nasty man for sluts, who was later determined to be Davies. They furthered this discussion on Yahoo chat.

The minors claim to have provided their correct ages, and the individual that they chatted with said he was a 19-year-old male from Pittsburgh. The discussion became sexual. Mr. Davies asked questions about the sexual experience of the 14-year-old girl. According to the minors, Mr. Davies asked if he could see what they looked like, and in response, the 14-year-old sent three photos of herself that were clothed, and directed him to her MySpace site so he could see the photograph of the 15-year-old.

According to the minors, Davies sent three photographs of himself via the computer, none sexually explicit. In the course of instant messaging, Mr. Davies obtained the home telephone number of the 14-year-old. According to the minors, Mr. Davies called her home telephone, and they talked for approximately ten minutes. This has been corroborated with phone records. The 14-year-old estimated that the phone call took place at approximately 7:30 to 8:00 p.m. on November 3rd.

Mr. Davies asked further sexual questions, including whether the two minors would engage in a threesome, and he asked whether he could pick them up. Via the Internet, he asked whether the 14-year-old would, quote, wear something

7

minors were interviewed by law enforcement officers and the computer used by the minors to chat with petitioner was seized. (Id. at 31.) The court at the time of sentencing explained that petitioner committed a serious offense, which involved a 14-year-old girl and a 15-year-

---

> sexy, end quote, when he picked them up, and what color, quote, thong and bra you got on, and, maybe you will let me see it, end quote.
>
> According to the 14-year-old, it was approximately 11:30 p.m. when she received a call from Davies, who said he was in Washington, PA near a Wendy's restaurant. The minor gave him directions to her house, and she had previously provided her address during the computer chat.
>
> Shortly thereafter, Mr. Davies arrived at her home, where she resides with her grandmother. The minor snuck out of the house, and they got into Mr. Davies' car. The driving time from Conneaut, Ohio to Washington, Pennsylvania is approximately three hours. The 14-year-old suggested, consistent with previous sexually explicit chats, that they travel to a horse farm in Cecil Township, Pennsylvania. While they were looking at horses, Officer Egizio drove by, and that's what prompted the detention and arrest of Mr. Davies.
>
> After interviewing those minors, Washington police officer John Yankosec traveled to the home of the 14-year-old in order to obtain her computer, by consent from her guardian, her grandmother. When the officers prepared to seize the computer, the contents of the computer screen displayed the sexually explicit chat that had gone on between Davies and the 14-year-old, including their sexually graphic discussion about horses and other animals.
>
> In the chat, for example, Mr. Davies inquires of the minor whether she ever made a horse ejaculate, and other animal-focused sexual talk.
>
> On November 4th, 2007, after midnight sometime, Mr. Davies made a statement to Officer John Yankosec at the Washington Police Department. He admitted to conversing with the minors on a computer on pre-teen sites, and eventually to Yahoo instant messaging. He did not deny that the content of the chats was sexual, explaining it was just a way to know somebody. He admitted to traveling from his home in Ohio, and he also admitted to talking to the minors on the telephone. According to the minors, as corroborated by Mr. Davies, no sexual conduct had actually taken place here in Pennsylvania as of the time of his arrest.

(ECF No. 98 at 28-32.)

old girl, who were vulnerable and suffered mental and emotional harm as a result of petitioner's conduct. (ECF No. 84 at 59.)

The court recognized that petitioner had mental health issues and he had realized the importance of medication. Id. at 60. Specifically, petitioner had a history of Tourette Syndrome and was diagnosed with obsessive compulsive disorder and major depression. He was prescribed medication for those conditions. Petitioner's presentence investigation report provides:

> At the age of approximately 19, the defendant was diagnosed with Obsessive Compulsive Disorder (OCD), and in 2004 he was diagnosed with major depression. According to his treating physician, Dr. Samar S. El Sayegh, with Signature Health, he is taking Haldol twice daily (0.5 mg) and Luvox (100 mg) twice daily. He is also attending therapy and anger management groups. According to the defendant's father, as the defendant matured and left the parental home, he would stop taking his medications, which would lead to unacceptable behavior and poor decision making on the defendant's part. Mr. Davies indicated that his son now realizes the need for the medication and to date he has been compliant with his medication regimen.
>
> …
>
> Relative to the instant offense, the defendant stated that his OCD in some way contributed to his commission of the offense as he experiences repetitive unwanted thoughts. Prior to his involvement in this offense, the defendant stated that he lost two jobs, he could not get his web page operational for a business he was attempting to start, and he was placed on academic probation at the University of Phoenix (see below), following which he began chatting online and became involved with the two minor victims.

Presentence Investigation Report ¶¶ 44, 45.[3]

---

[3] Pursuant to the court's local rules, presentence investigation reports are confidential documents. LCrR 32(C)(1). Inclusion of the paragraphs of the presentence investigation report about petitioner's mental health in this opinion, however, does not offend the confidential nature of that document. Petitioner filed on the court's docket mental health records in an effort to show that he no longer requires medication for his mental health issues. Petitioner, therefore, waived

9

Petitioner at the time of sentencing stated the following with respect to the medications he was prescribed for his mental health issues:

> Had I been on it, this case never would have been performed or whatever the word might be, never would have happened and I would not be standing here today if I had been on my medication. When I'm on my medication, I handle my stress completely in a positive manner. I'm calm. I'm collected. I think clearly. I do responsible things. I work hard. I communicate with people. I'm sociable when I'm on my medication. I'm a normal person when I'm on my medication. My problem with not taking it has always been that I want to be normal without taking medication. I don't want to be medication dependent all my life, but now this realization -- like I said, it's too bad something this serious had to happen to make me realize I need that medication to be stable, to be normal, to live my life the right way. Now I realize that and now that I realize this stuff. It helped I was in jail because I got to research the law and see the perspective as far as everybody in the courts and government and it got me on the medication that really helps me, which I continued as I was on house arrest. So it was a big majority of the factor.
> …
> I take a generic version of Haldol which is cheaper, which is why I take the generic. It's very -- it does just fine, connects the wires that are crossing in my brain and makes them work right. I took Luvox. Haloperidol is an anti-psychotic which corrects the Tourette's syndrome and Luvox is anti-depressant/anti-OCD, which completely I needed it for years. With those medications, I am completely normal.

(ECF No. 83 at 49.)

Petitioner previously submitted to the court documents entitled "Physician Progress Note" from "Community Counseling Center." (ECF No. 188-5.) In the first physician progress note dated January 5, 2015, the physician, Dr. Premal Patwa, noted that the length of the session was 15 minutes and referred petitioner to counseling. (ECF No. 188-5 at 3.) The next physician note dated April 13, 2015, noted that the length of the session was 15 minutes and provides that "[t]he patient has been stable for a while without any

---

any argument that the information about his mental health in the presentence investigation report, upon which the court relied to sentence petitioner, is confidential.

medication[,]" and that "[t]he patient does not need to be on medication at present." (ECF No. 188-5.) While the physician notes reflect that petitioner had a history of Tourette's Disorder and that other disorders such as depressive disorder and social anxiety disorder were ruled out by the physician, none of the physician notes mention petitioner's history of obsessive compulsive disorder, whether he required medication for that disorder, when the medication was discontinued, whether the medication was discontinued on the advice of a physician, or whether the physician who wrote the notes had reviewed petitioner's presentence investigation report. (ECF No. 188-5.) A "Discharge/Transfer Summary" dated May 29, 2015, authored by a "Licensed Independent Social Worker" provides that petitioner began the sessions on January 28, 2015, his "Last Contact" was May 29, 2015, and petitioner "requested that he be closed to services" on May 29, 2015. (Id. at 8.) Only two physician notes were provided to the court and there is no indication about whether petitioner saw the physician for other sessions during that time period or at any other time during his term of supervision.

According to petitioner's presentence investigation report, petitioner has a history of using cocaine base and binging on alcohol. He previously participated in residential drug treatment.

The court at sentencing commended petitioner for putting himself at risk after his arrest to help protect other children. Id. Petitioner served 19 months in county jail, suffered verbal and physical abuse, and was in solitary confinement for a period of the incarceration. Id. at 61. The court explained with respect to the lifetime term of supervision:

>    The reason for the supervised release is the concerns with the need to be on medications. The only way for public safety because as your parents age, and it happens to all of us, one never knows what is going to be happening or where you will be living and there will be stresses that you're going to have in the future and the temptation to go off medications, it's a part of the mental health situation. It's something that the Court has to be sensitive to. So, if there's ongoing supervision, the chance that you ever come back and do anything like this again is going to be greatly lessened. That's why I think it was important for there to be life supervision.

Id. at 61.

The court at the time of sentencing mentioned that petitioner had a prior criminal history. (ECF No. 84 at 60.) Petitioner since the time of sentencing presented evidence to the court to show that his prior conviction was vacated. (ECF No. 110-1.)

***(2) The need for the sentence imposed to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, § 3553(a)(2)(B)−(D):*** As discussed above, the court explained that it imposed a lifetime term of supervised release not only so that petitioner would be required to take any medication but to provide "ongoing supervision" of petitioner to "greatly lessen..." the chance that he would commit a similar crime in the future. (ECF No. 84 at 61.)

***(3) The sentencing range established by the Sentencing Commission, § 3553(a)(4):*** As this court recently explained:

>    Petitioner at the time of sentencing had a total offense level of 25 and a criminal history category of II, which took into account two prior offenses, one of which is the prior conviction that was later vacated. Petitioner's total offense level of 25 and a criminal history category of II resulted in a guideline range for imprisonment of 63 to 78 months. At the time of sentencing, the

> government filed a motion pursuant to U.S.S.G. § 5K1.1 and the plea agreement. In consideration of that motion, the court sentenced petitioner to a term of imprisonment of time served, which was well below his guideline range of 63 to 78 months, because he had only served nineteen months of imprisonment at the time of sentencing. If the court did not rely upon the prior conviction that was later vacated, and petitioner's criminal history score was a category I instead of a category II, the guideline range for imprisonment based upon an offense level of 25 would have been 57 to 71 months. Petitioner's sentence of time served, i.e., 19 months, was far below even the lower end of that guideline range.

(ECF No. 180 at 12.)[4]

***(4) Any pertinent policy statement issued by the Sentencing Commission, § 3553(a)(5):*** The court at the time of sentencing took into consideration the following policy statement: "If the instant offense of conviction is a sex offense, however, the statutory maximum term of supervised release is recommended." U.S.S.G. § 5D1.2(b)(2); (ECF No. 83 at 64.) The statutory maximum term of supervised release was life. 18 U.S.C. § 3583(k).

***(5) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, § 3553(a)(6):*** The court explained at the time of sentencing that the sentence did not create an unwarranted sentencing disparity in light of the government's motion filed pursuant to U.S.S.G. § 5K1.1. (ECF No. 84 at 64.)

---

[4] Petitioner now argues, however, that the court erroneously relied upon U.S.S.G. § 2G1.3(b)(2)(A) to enhance his guideline calculation by two levels. (ECF No. 265 ¶ 7.) Petitioner, however, did not raise that argument at the time of sentencing or appeal that issue to the Third Circuit Court of Appeals. A motion to terminate supervised release is not the proper motion to raise issues that could have been raised at the time of sentencing, on appeal, or in another post-conviction motion.

***(6) The need to provide restitution to any victims of the offense, § 3553(a)(7):*** The court ordered petitioner to pay restitution to one of the victims of petitioner's offense. According to petitioner, he paid that amount in full.

**B. Petitioner's request to terminate his term of supervision**

"Generally[,] . . . early termination of supervised release under [§] 3583(e) should occur only when the sentencing judge is satisfied that something *exceptional* or *extraordinary* warrants it." United States v. Laine, 404 F. App'x 571, 573–74 (3d Cir. 2010) (citing United States v. Lussier, 104 F.3d 32, 36 (2d Cir. 1997)) (emphasis added). "Simple compliance with the conditions of supervised release [is] expected and not exceptional." Id. at 574; United States v. Abdelhady, No. 06-63, 2013 WL 1703775, at *2 (W.D. Pa. Apr. 19, 2013) ("[I]t is well-settled that mere compliance with the terms of supervised release, while commendable, is not sufficiently extraordinary to justify early termination."); United States v. Dudash, No. 05-101, 2012 WL 874878, at *3 (W.D. Pa. Mar. 14, 2012) ("Defendant's full compliance with all of the conditions of supervised release does not warrant early termination."). "In other words, the § 3553(a) factors and the interest of justice do not support early termination unless there is a reason other than compliance with the conditions of supervision." United States v. Banks, No. 04-176, 2015 WL 926534, at *4 (W.D. Pa. Mar. 4, 2015) (citing United States v. Medina, 17 F. Supp. 2d 245, 247 (S.D.N.Y. 1998) ("While [the defendant's] post-incarceration conduct is apparently unblemished, this alone cannot be sufficient reason to terminate the supervised release since, if it were, the exception would swallow the rule.")).

Here, petitioner did not show that extraordinary circumstances exist warranting the early termination of his supervision. The terms and conditions of supervision were imposed upon petitioner in consideration of the pertinent § 3553(a) factors, including, the serious crime committed in this case, which involved pretending to be 19 years old, using a computer to engage in sexually explicit conversations with two minors, travelling interstate to meet them in person, taking the minors into his car to a place where horses were located after engaging in bestiality discussions with the minors concerning horses, and his history of mental health issues and drug and alcohol abuse. The detrimental impact on the minors, petitioner's mental health, history of drug and alcohol abuse, use of a computer, and the dangerousness of the crime committed in this case are still concerning to the court. Under those circumstances, the information presented by defendant does not warrant early termination of his term of supervised release. Ongoing supervision of petitioner lessens the chance that petitioner will again reach out and engage in unlawful behavior with minor children.

### C. Petitioner's request to modify terms of supervision

Petitioner argues specifically that two of the conditions of supervision should be removed. Petitioner, however, did not present sufficient information to show that he is entitled to modification of the conditions of supervision. Petitioner argues that the condition of supervision requiring him to provide urine samples for drug testing should be removed because he has "successfully passed every urine test…[he has] taken." (ECF No. 265 at 4.) Petitioner, however, has a history of drug and alcohol abuse, which necessitates this condition of supervision. Mere compliance with the condition is not sufficient for the court to

remove the condition in light of its concerns about petitioner's history of using cocaine base and binging on alcohol.

Petitioner argues that the condition requiring participation in a mental health or sex offender treatment program should be terminated because he completed the sex offender treatment program. As explained above, compliance with the terms of supervision is expected. The term of supervision provides that defendant must continue to participate in a mental health or sex offender treatment program until released by the court, and there is no indication that the probation office has requested that this court release petitioner from this requirement.[5] Petitioner committed a very serious crime, which caused significant harm to at least one minor, vulnerable girl. Petitioner also has a history of mental health issues, which when left untreated by medication contributed to him committing the offense in this case. Under those circumstances, the condition of supervision requiring petitioner to obtain mental health treatment or sex offender treatment is necessary to protect the public from petitioner's

---

[5] The court rejects petitioner's argument that his probation officer is engaging in misconduct by requiring him to submit to a polygraph test. The term of supervision provides:
> The defendant shall participate in a mental health and/or sex offender treatment program, as approved by the probation officer, until such time as the defendant is released from the program by the court. The defendant shall abide by all program rules, requirements, and conditions of the sex offender treatment program, including submission to polygraph testing, to determine if he is in compliance with the conditions of release.

(ECF No. 75 at 4.) Petitioner argues that he completed the sex offender treatment program. The court, however, has not released him from the program. Polygraph testing, therefore, may still be required by the probation officer.

Petitioner also argues that his probation officer is requiring him to pay monitoring costs of the computer he uses, which is his father's computer, but petitioner does not have the financial means to use the computer. The court, however, cannot analyze this argument because petitioner did not submit any information about his financial income or the amount of the monitoring costs that the probation officer is requiring him to pay. Petitioner's ability to pay the costs must be considered by the probation officer.

future crimes and to provide petitioner necessary treatment. Petitioner did not provide the court sufficient information to warrant the modification of or to remove the conditions that he be subject to drug testing or participate in a mental health or sex offender treatment program. Petitioner's motion to terminate supervision or modify the conditions of release will, therefore, be denied.

### IV. Motion to Strike the Government's Untimely Response (ECF No. 271)

Petitioner filed his motion to terminate supervised release on January 3, 2018. Pursuant to court order, the government's response to that motion was due on or before January 26, 2018, and the government did not seek an extension of that deadline. (ECF No. 267.) The government did not file its response in opposition until February 3, 2018. (ECF No. 270.) Petitioner filed a motion to strike the government's untimely response. (ECF No. 271.) The court, however, did not rely upon the government's response in opposition to deny petitioner's motion to terminate supervision. The court analyzed the § 3553(a) factors, which the government did not address, and determined it would deny the motion. Under those circumstances, the motion to strike the government's untimely response will be denied as moot. The government is reminded of its obligations to comply with the court's scheduling deadlines, which may include filing a motion for extension of time prior to the expiration of the applicable deadline.

### V. Motion to Appoint Counsel (ECF No. 266)

Petitioner filed a "Financial Affidavit In Support of Request for Attorney, Expert, or Other Services Without Payment of Fee[,]" which was construed as a motion to appoint counsel. (ECF No. 266.) In light of the court's rulings with respect to the motion to terminate

supervision and motion to strike the government untimely response, that motion will be denied as moot.

## VI. Conclusion

Petitioner in his motion for recusal attacks the undersigned judge's rulings and asserts the unfavorable rulings as a basis for recusal. Petitioner did not show that a reasonable person with knowledge of all the facts would conclude that the undersigned judge's impartiality may be questioned. The motion for recusal (ECF No. 274) will, therefore, be denied. Upon consideration of the § 3553(a) factors, petitioner is not entitled to early termination of supervision. At best, he has complied with the terms of supervision. He did not show that extraordinary circumstances exist warranting early termination of his supervision or modification of the conditions of his supervised release. The motion for early termination of supervised release (ECF No. 265) will, therefore, be denied. The court did not rely upon the government's untimely response in opposition to the motion for early termination of or modification to the conditions of supervised release. Petitioner's motion to strike the government's response (ECF No. 371) will be denied as moot. Petitioner's request for appointment of counsel (ECF No. 266) will be denied as moot because petitioner did not show that he is entitled to representation at this time. An appropriate order will be entered.

BY THE COURT.

Dated: May 16, 2018

/s/ JOY FLOWERS CONTI
Joy Flowers Conti
Chief United States District Judge

cc: Robert Davies
7455 Harmon Road
Conneaut, Ohio 44030